In the Matter of **ARKANSAS FUEL OIL CORPORATION, CITIES SERVICE COMPANY.**
**Civ. A. No. 2223.**

United States District Court
D. Delaware.
Aug. 10, 1964.
As Amended Aug. 13, 1964.

Solomon Freedman and Louis E. Clevenger, Washington, D. C., for the Securities & Exchange Commission.

Henry M. Canby of Richards, Layton & Finger, Wilmington, Del., Bruce Bromley, of Cravath, Swaine & Moore, W. John Nauss, Jr., of Meyer, Kissel, Matz & Seward, New York City, Henry L. O'-

Brien of Cities Service Co., and Everett Young of Frueauff, Farrell, Sullivan, Bryan & Ferris, New York City, for Arkansas Fuel Oil Corp. and Cities Service Co.

Lipman Redman and Edgar J. Goodrich, Washington, D. C., for Guggenheimer, Untermyer & Goodrich and Bishop & Hedberg, Inc.

Harold B. Dondis, Boston, Mass., for Rich, May & Bilodeau, formerly Burns, Blake & Rich, and Hon. William Duffy, Jr.

Daniel O. Hastings and Clarence W. Taylor, Wilmington, Del., for Hastings, Taylor & Willard.

CALEB M. WRIGHT, Chief Judge.

On September 2, 1960 this court approved and enforced the terms and provisions of a plan previously approved by the Securities and Exchange Commission (SEC), pursuant to Section 11(d) of the Public Utility Holding Company Act of 1935 (Act), 15 U.S.C. § 79 et seq. The plan eliminated the minority stock interest of the Arkansas Fuel Oil Corporation (Arkansas), a subsidiary of Cities Service Company (Cities).[1]

The plan provided for payment by Cities of appropriate fees and expenses in connection with the elimination of the minority stockholders. This court reserved jurisdiction to take whatever legal action was necessary to implement and ultimately to wind up the present litigation.[2]

Applications for allowances of fees and expenses were duly filed with the Commission, notice given and a hearing held. In order to facilitate the consideration of the fee applications, the Commission

---

1. The public minority interest was 48.5 per cent, the balance held by Cities Service Company which was then a registered holding company. Minority interest was eliminated by paying the public minority stockholders $41 in cash per share or a total of $75,577,186.

2. The order of the court contained the following provision:

"10. This court reserves jurisdiction to entertain such further proceedings, to make such further findings, to enter such supplemental orders and decrees, to take such further action and to grant such other and further relief as it may deem appropriate in connection with the plan, the transactions incident thereto, and the consummation thereof, including the enforcement and review, if application therefor is duly made, of subsequent orders of the Commission relating to the plan."

by letter suggested that Cities meet with the various applicants and report what agreement, if any, could be reached as to allowances of fees and expenses. Negotiations were held by Cities with certain of the applicants resulting, in most cases, in agreements as to fees and expenses. Cases in which Cities was in agreement with the applicants were submitted to the Commission, approved, and the amounts thereof were directed to be paid (Holding Company Act Release Nos. 14551 (Dec. 20, 1961) and 14562 (Jan. 15, 1962)).[3]

Applicants with whom Cities failed to reach agreement or deemed it useless to negotiate were as follows:[4]

| Applicants | Fees Requested | Expenses Requested |
|---|---|---|
| Guggenheimer, Untermyer & Goodrich, Attys. for Benedum interests. | $350,000.00 | $ 9,252.56 |
| Bishop & Hedberg, Inc. Experts brought in by the Goodrich firm. | 369,000.00 | 4,464.00 |
| Rich, May & Bilodeau, Attys. for the Hearn interests and assistant counsel to Percival Jackson, chief attorney for the Public Common Stockholders of Arkansas. | 250,000.00 | 16,827.47 |
| William Duffy, Jr., local counsel for Rich, May & Bilodeau. | 4,935.00 | – |
| Kenody R. Ware (Expert). | 5,350.00 | 835.90 |
| Hastings, Taylor & Willard, Attys. for Elias Auerbach, a minority stockholder. | 16,000.00 | 143.07 |
| Benjamin Weinstein | 750.00 | – |

3. It is interesting and pertinent to note that by agreement Cities paid its own counsel $200,000 and $18,359.01 expenses; its experts received a total of $383,972.06 in fees and $125,882.95 expenses (the largest item being a fee to Stone & Webster Corporation in the amount of $161,535 and expenses in the amount of $21,400.88); counsel for Cities Service Stockholders Committee was granted a fee of $50,000 and $8,319.-72 expenses and the expert for the Committee received a fee of $25,000 and expenses in the amount of $1,040.18; counsel for the Arkansas Fuel Oil Corporation Public Common Stock Committee (the holders of 48.5 per cent of the common stock) received a fee of $532,500 and $24,545.89 expenses, while the experts for the Public Common Stock Committee as agreed to by Cities received a total fee of $115,636.25 and expenses in the amount of $13,653.22.

4. The firm of Wolf, Popper, Ross, Wolf & Jones and Martin Horwitz reached an agreement with Cities allowing a $10,000 fee and payment of $2,000 as reimbursement of expenses. This settlement was disapproved by the Commission. I am in accord with the opinion of the Commission and find the disallowance of the agreed settlement to be in conformity with the proper legal standards and the substantive evidence.

In the Fee Opinion the Commission directed Cities to make the following payments:

| Applicants | Fees | Expenses | Total |
|---|---|---|---|
| Guggenheimer, Untermyer & Goodrich | $135,000.00 | $ 9,252.56 | $144,252.56 |
| Bishop & Hedberg, Inc. | 140,000.00 | 4,464.00 | 144,464.00 |
| Rich, May & Bilodeau | 185,000.00 | 16,827.47 | 201,827.47 |
| William Duffy, Jr. | 4,935.00 | – | 4,935.00 |
| Kenody R. Ware | 5,350.00 | 835.90 | 6,185.90 |
| Total ........... | $470,285.00 | $31,379.93 | $501,664.93 |

In every proceeding in which enforcement of a SEC fee determination is sought in a district court, the scope of review of the SEC is limited to whether the Commission's findings of fact and conclusions of law are (1) adequate; (2) supported by substantial evidence determined upon the basis of the whole record, and (3) in accordance with legal standards.[5]

The court has no right to substitute its own judgment for that of the Commission where the Commission's position is substantially supported by the evidence and it has abided by the proper legal standards.

The court will endeavor as succinctly as possible to dispose of the claims. In doing so it will treat each claim separately. Thereafter, it will treat together the right of certain of the fee applicants to supplemental fees and expenses claimed by them for services rendered before the Commission and this court in support of their application for compensation and expenses theretofore rendered and their right to interest from the date of the Commission's order on fees and allowances.

### CLAIMS FOR FEES AND EXPENSES

(1) *Guggenheimer, Untermeyer & Goodrich (Goodrich) and Bishop & Hedberg, Inc. (Hedberg)*

An examination of the record and the findings and opinion filed by the Commission (Holding Company Act Release No. 14992) convinces the court the findings of the Commission are supported by substantial evidence and were arrived at in accordance with proper legal standards. The court does not propose to do more than to make several observations which it deems pertinent.

Goodrich entered the picture at the time Cities filed its division of assets plan. This firm opposed the plan primarily because of the difficulty of creating a sound competitive operating entity simply by dividing the assets of Arkansas. Whether or not this opposition was the primary reason, Cities withdrew its division of assets plan, and substituted an exchange of stock plan. In principle this was agreeable, but after consulting with Hedberg, security analyst, the firm opposed the proposed exchange rate of one share of Cities to each 2.4 shares of Arkansas as unfair and inequitable to the public stockholders of Arkansas. Goodrich was instrumental in presenting Hedberg's testimony in a manner which convinced the Commission that the suggested exchange ratio was indeed unfair. The firm and its expert presented two evaluations of Arkansas stock: the so-called "enterprise value" which indicated the Arkansas stock should be valued at $45.40 per share, thus making the fair exchange ratio 1 to 1.3 instead of 1 to 2.4 and the "hypothetical market value" (investment value) under which method

5. In re United Corporation, 184 F.Supp. 502 (Del.1960); In re United Corporation, 249 F.2d 168, 171 (3 Cir. 1957). See also Securities and Exchange Commission v. Chenery Corporation et al., 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L. Ed. 1995 (1947); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. (1951).

the Arkansas stock would be worth $36.83 to $40.27 per share. This contrasted with the testimony of Cities' experts on the exchange of stock plan which indicated an investment value of $24 to $28 per share for Arkansas stock. Based upon a valuation of $28 per share, this was approximately $12 per share or $22,000,000 less than Goodrich and Hedberg estimated the public minority interests to be worth. During this time an independent oil company offered $40 per share for Arkansas stock. It was then quickly agreed that Cities would pay $41 per share.[6]

These contributions certainly were of great value to the minority stockholders interests and the record amply supports this fact. The court is also of the opinion the Commission was justified in finding the amount paid by the Benedum interests was not an agreed upon fee and in full payment for Goodrich's and Hedberg's services. The record also supports the findings of the Commission that not only did this firm's service and the efforts of the expert, Hedberg, benefit the Benedum interests but all public minority stockholders. The court is therefore of the opinion the allowance by the Commission of $135,000 as a fee is adequate and reasonable and the reimbursable expenses in the amount of $9,-252.56 are proper. Although on an hourly basis this represents compensation at the rate of $125 per hour, it does not seem out of line when one considers that Jackson received $62 per hour and the Rich firm $45 per hour for work done largely on a cooperative basis. If we were to consider Jackson and Rich as collaborators asking for one fee, the hourly fee allowed would have been $107.

As to Hedberg, certainly the Commission was impressed by his testimony and relied heavily on his valuations and his explanation of the problems involved in making a proper evaluation of oil company properties. When one considers the fee of $161,535 paid Stone & Webster by Cities under agreement, an allowance of a fee of $140,000 to Hedberg does not seem unreasonable. Even with this allowance, the fees allowed experts of the opponents of Cities would not equal the amount Cities paid its own experts.[7]

(2) *Hastings, Taylor and Willard (Hastings)*

On February 9, 1956 the Hastings firm instituted a derivative stockholders' suit against Cities on behalf of Arkansas at the behest of one Elias Auerbach. This suit was brought in the Delaware Court of Chancery. Suit was commenced after the Commission hearing and oral argument on the exemption phase of this litigation and while this particular matter was pending decision. The action involved claims by Arkansas against Cities under the so-called Phantom Refinery Contract which had been presented to the Commission at the exemption hearing. At this time, however, the Commission had not committed itself as to the position it would take with respect to hearing the claims arising out of the refinery contract. On September 25, 1956 Cities filed its answer to the complaint and moved for summary judgment.[8] The motion for summary judgment placed in issue, what claims, if any,

6. The additional $1 per share represented the agreed amount per share to be paid Cities in settlement of the refinery contract claims.

7. Cities paid its experts fees totaling $383,-972.06. If we include the amount of $140,000 allowed Hedberg and the expert for the Common Stockholders Committee of Cities Service Company (Mackoul), the total paid experts other than those employed by Cities total $280,626.-25.

8. Jackson with the approval of Hastings immediately took charge of the Delaware litigation and made all of the presentations to the court, except for one part of the oral argument before the Supreme Court which Hastings assumed at Jackson's suggestion. This involved, according to Senator Hastings, criticism of the Chancellor's initial disposition of the claims matters taken before him.

had been compromised and included in this court's prior approval of the plan of reorganization. The Chancellor held that suit for all claims by Arkansas against Cities arising out of the refinery contract were barred. On appeal, the Supreme Court of Delaware ruled that claims were open after October 1, 1952, the date of settlement under the reorganization plan. When the case was remanded by the Supreme Court to the Court of Chancery and the claims issue apparently scheduled for trial in Delaware, Dondis, representing the Rich firm, filed a second derivative suit in the Delaware Chancery Court and immediately began to prepare for trial and to gather evidence with respect to the complicated claims issue. The two derivative suits were consolidated for trial. The Commission intervened. The Delaware actions were stayed and the matter returned to the Commission where a settlement was reached which substantially benefited the minority public stockholders of Arkansas.

The Auerbach diversity suit could have been disastrous, but it was not. Jackson and Dondis had to prepare themselves to meet Cities' objections to the payment of any claims arising out of the refinery contract either in Delaware or before the Commission. The matter had to be litigated somewhere. The Delaware litigation was a factor in settling the refinery claims without deciding many complicated issues of law and fact, and it reduced materially the possibility of attack on the Commission's determination of this issue. Under the circumstances, I

can see no legal justification or substantial evidence in the record which would warrant a denial of a modest fee to this firm. Other counsel involved in the Delaware phase of this litigation have been or will be compensated directly or indirectly by Cities. If the services of other Delaware counsel contributed to the estate available to the minority stockholders of Arkansas, the Hastings firm also made some small contribution.[9] I do not, however, find any substantial evidence that the services of Hastings' firm were unlike those performed by Duffy. I am of the opinion, that a fair and reasonable fee to be allowed the Hastings firm would be $5,600.00 [10], and reimbursement of expenses in the amount of $143.07.

(3) *Rich, May & Bilodeau (Rich) and William Duffy, Jr., (Duffy)*

██ The Rich firm appeared of record throughout all phases of the consolidated proceedings, including the review proceedings in the Courts of Appeal, as counsel for the members of the Hearn family,[11] and from February, 1958 as associate counsel for the minority stockholders committee of Arkansas. It would serve no useful purpose and be repetitious to review in detail the work done by this firm since it has been fully set forth by the Commission in its findings and opinion. It suffices to say that the record substantiates the contention of Dondis that there was a minimum of duplication of work by this firm and by Percival Jackson, special counsel for the Committee. Also it is apparent that the

9. The commencement of derivative litigation might have been avoided but, in spite of all that has been said, it served a purpose and the balancing of a certain reckless disregard as to what was best from a long range point of view in the interest of the public stockholders against the contributions made in resolving the claims issues weighs in favor of a modest award to the claimants.

10. I consider the respective roles of Duffy and the Hastings firm and their contributions substantially the same.

11. The Hearn family were substantial stockholders owning 9,000 shares of Arkansas stock. There were additional stockholders represented by the Rich firm, but because of objections by Cities as to proof of representation of these individuals they were dropped. Cities in its brief attacked the ethics of the Rich firm representing these parties, however, the matter has been considered by the Commission and I do not deem it meritorious or a substantial issue before me.

bulk of the work on the claims phase was to a large degree left to Dondis to develop and present to the Commission. This, together with the results obtained in the Delaware litigation, at least to some extent, resulted in an increase of $1.00 per share paid by Cities to the minority stockholders of Arkansas or a total of $1,843,346, not an insubstantial sum. I am of the opinion that the fee of $185,000 allowed by the Commission is reasonable and fair compensation to this firm, not out of line, supported by substantial evidence and arrived at by the application of the proper legal standards. I also approve the allowance by the Commission of expenses in the amount of $16,827.47.

■ A few words must be added about the Delaware litigation and Duffy. Whether it was necessary for the Rich firm to file a second derivative suit or for Auerbach to file his derivative suit in the first place might well be subject to doubt. However, when this litigation in Delaware was commenced, matters were not as well delineated as they appear today. Certainly two things were accomplished by the Delaware litigation. First, claims subsequent to October 1, 1952 were determined to be the subject of further litigation or compromise. Second, the Delaware derivative suits pointed up the importance of the claims matters being presented to the Commission for determination. This coupled with the possibility that certain rulings of the Delaware Courts with respect to the necessity of proof of wrong by directors would be held by the Commission not to apply,[12] in my opinion, contributed substantially to settlement of the claims issue without a final determination by the Commission as to the actual amount due from Cities to Arkansas. The activity of the Rich firm and Duffy in con-

nection with the second derivative suit filed in Delaware was a factor in the successful culmination of the claims settlement. Thus it would be contrary to a reasonable inference, based on substantial evidence, if I were to conclude the Commission was in error in awarding Duffy compensation in the amount of $4,935.00.

### (4) Kenody R. Ware

The Commission awarded Ware a fee of $5,350.00 and reimbursement of $835.90 for his expenses as an expert hired as a consultant by Percival Jackson.

■ Cities' objection to the Commission's allowance is based upon duplication of services performed by Ware. Cities is especially critical of the duplication by Ware of services performed by the Gertz firm. In complicated litigation of this nature where opinions of experts are subject to severe attack, it seems logical and helpful to have more than one expert.[13] Also from the record before me I believe the Commission was correct in finding that Ware's services were not duplicative of Gertz since Gertz and Ware apparently worked on the same problems and made available to each other their individual reports which were used by both as a basis for individual expert opinion. I agree with the Commission and approve its reasoning and the conclusions reached. Accordingly, Ware is entitled to a fee of $5,350.00 and reimbursable expenses of $835.90.

### (5) Benjamin Weinstein

The court finds the Commission's action in denying this application was entirely justified, and that nothing can be added to what is stated with respect to this claim in the findings and opinion of the Commission. See Holding Company Act Release No. 14992, p. 43.

12. See Auerbach v. Cities Service Company, 37 Del.Ch. 381, 143 A.2d 904 (1958).

13. It might be the better practice to have a conference before hearings by the Commission and attempt to limit the number of experts and the area to be covered as is often done in protracted patent litigation.

APPLICANTS' REQUEST FOR AWARDS OF ADDITIONAL COMPENSATION AND INTEREST ON FEES AND REIMBURSABLE EXPENSES ALLOWED FROM THE DATE OF THE COMMISSION'S AWARD

Applicants Guggenheimer, Untermyer and Goodrich and Hedberg, and Rich, May & Bilodeau request a fee for their services in presenting to the Commission and to this court the basis for the award of fees and allowances to themselves. They also request interest from the time of the award by the Commission and reimbursement for additional expenses incurred by them in connection with their appearance in behalf of themselves for compensation before the Commission and this court.

In the Matter of United Corporation, 184 F.Supp. 502 (Del.1960), this court tacitly approved the position taken by the Commission that "litigation costs of obtaining a fee are not compensable". The position of the Commission to which this court subscribes is well stated In the Matter of United Corporation, 39 S.E.C. 391, 396, the United Corporation, Holding Company Act Release No. 14047 (1959) page 8, as follows:

" * * * a fee claimant is not entitled to compensation for preparing and presenting his own request for an allowance to the tribunals which must initially pass upon them, i. e., the Commission and the District Court in Section 11(e) proceedings and the District Court in Chapter X (11 U.S.C.A. § 501, et seq.) proceedings. This principle is based upon a balancing of competing equities of the persons affected which in the interest of fairness must make appropriate 'practical distinctions * * in distributing the costs of the burden of the litigation', and has been recognized as a 'salutory rule' which

helps preserve the assets of the estate."

The applicants' claims for supplemental fees and expenses will be denied. The authorities relied upon in the applicants' briefs are not in point. The expenses of an attorney traveling to New York at the request of the Commission to confer with the company relative to fee allowances,[14] thus reducing the time and expense of a reorganization, is quite a different story from the one unfolded here. Nor is Sprague v. Ticonic Nat. Bank, 110 F.2d 174 (1 Cir. 1940) persuasive. This case is one of unusual facts. In order to secure an award of fees and expenses obtained in the District Court an appeal to the Circuit Court was necessary. The appeal to the Circuit Court was the last phase of litigation which had gone to the Supreme Court and thence back to the District Court wherein the amount involved was in the approximate sum of $5,000. The Circuit Court affirmed the award of fees by the District Court in the amount of $1,214.51 and held the District Court had the right to consider additional fees of $1,877.30 requested by petitioner's counsel for fees and expenses incurred in the Court of Appeals and the Supreme Court in litigating the fee issue. While the final disposition with respect to fees on fees is not available to this court, it is conceivable that if the fees requested were not granted by the court the petitioner would have expended $3,091 to obtain the sum of $5,000 justly due her. Also there were others similarly situated, who although not parties to this action, nevertheless were benefited by the adjudication of the principal issue. No such startling situation exists here. A substantial sum will remain to the applicants in the absence of any further award as requested.

My ruling, however, is not based upon these matters alone. To the contrary, it is based upon the balancing of the equities as I view them and a firm conviction that no allowance of supplemental fees or expenses is warranted.

14. Standard Gas and Electric Company v. Securities and Exchange Commission, 212 F.2d 407 (8 Cir. 1954) cited and relied upon by the applicants.

■ It is usual for the Commission to seek an enforcement order when fees are determined subsequent to reorganization proceedings if either the company or the applicants object to the award. Here the court reserved jurisdiction and the Commission made application for an enforcement order in conformity with its usual procedure. Neither party has attempted to proceed under Section 24(a),[15] which permits any party aggrieved to seek review of the Commission's order directly in the Court of Appeals.[16] The applicants lay considerable stress on the unusual situation present here, namely, that it is not the applicants who are seeking an enlargement of the fees awarded them by the Commission, but the company (Cities) seeking to prevent them from receiving anything. The applicants also point out that it has been the policy of the Commission to allow supplemental fees wherever applicants have prevailed in the reviewing court based upon the amount by which their award was increased by the court. It would be less than candid to deny that there is merit in analogizing the situation here to the award of fees to successful fee applicants before the reviewing court. But there is another side to the coin. A litigant should not be discouraged or penalized for strenuously waging his cause before any proper tribunal, if such action is not capricious or frivolous. I cannot see how it would be proper, absent capriciousness or frivolity on the part of Cities, to penalize it by awarding additional fees and allowances simply because it pursued one of the statutory avenues open to it. Similarly, it would not be proper to reduce the award of fees and allowances by the Commission on review *at the request of the fee applicant,* when the reviewing court sustained the Commission's award and did not think the requested additional allowance warranted. Certainly in such circumstances the prevailing party, that is the company, would not be entitled to compensation for the additional expenses it had been put to in defending itself successfully against an increase in the Commission's award.

I cannot say that Cities should not have negotiated the question of fees and allowances with the applicants herein, but neither can I say that Cities was under a duty to do so. Whether to negotiate or not was a decision which had to be made by those who were obligated to represent the interests of Cities to the best of their ability. If in their opinion there was nothing to negotiate, embarking on that course would have been a waste of time and money to all parties concerned. If the applicants were of the opinion that Cities was under obligation to negotiate by reason of the Commission's letter, it would have been a simple matter to have complained to the Commission and to have pointed out the failure of Cities to comply with the Commission's directive. Such procedure would have quickly brought about the desired result or would have informed the parties as to the meaning and import of the Commission's letter.

■ With respect to the claims for interest on the awards of the Commission, I know of no provision in the Act which warrants an allowance by this court of interest. An award of fees and allowances by the Commission is no more a judgment than the approval of a plan in a Section 11 proceeding by the Commission. Enforcement of fee allowances is no different from other aspects of reorganization proceedings. Until such time as this court has made an order of enforcement, there is no judgment or decree upon which interest could accrue.[17] Furthermore, this court does not sit as an appellate tribunal but as a court of review under the provisions of an Act which specifically provides for such review. The order of the Commission is

---

15. 15 U.S.C. § 79x(a).

16. I need not decide whether the parties could have sought direct review in the Court of Appeals under § 24(a) ab-
sent release of jurisdiction by the Commission or this court.

17. See 28 U.S.C. § 1961.

unenforceable without the agreement of the parties.[18] In order for it to have the effect of a judgment or decree an enforcement order must be obtained from a District Court if the procedure elected is under § 11(e).[19] The claims for interest will not be allowed.

Submit order in accordance herewith.

18. S. E. C. Control of Fees and Expenses in Reorganizations under the Public Utility Holding Company Act, 68 Harv. L.Rev. 1409, 1420, 1421.

